**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ARMANDO LEGUIZAMO, JR.,

          *Plaintiff*,

    v.

COSTCO,

          *Defendant*.

Civil Action No. 23 - 2166 (LLA)

## <u>MEMORANDUM OPINION</u>

Plaintiff Armando Leguizamo, proceeding pro se, brings this suit against his former employer, Costco Wholesale Corporation ("Costco"), alleging retaliation in violation of Title VII of the Civil Rights Act of 1964. Pending before the court are Costco's Renewed Motion to Dismiss, ECF No. 16, and Mr. Leguizamo's Motion for Leave to File a Surreply, ECF No. 20. For the reasons discussed below, the court will deny Mr. Leguizamo's Motion for Leave to File Surreply and grant Costco's Renewed Motion to Dismiss.

## I.    FACTUAL BACKGROUND

In considering Costco's motion to dismiss, the court will assume that the facts alleged in Mr. Leguizamo's complaint are true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court may also take judicial notice of documents from the administrative proceedings. *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018) (explaining that "[i]n employment discrimination cases, courts often take judicial notice of [Equal Employment Opportunity Commission ("EEOC")] charges and EEOC decisions" in evaluating a motion to dismiss).

Beginning in March 2019, Mr. Leguizamo was employed at a Costco warehouse in Northeast D.C., first as a gas station attendant and later as a cashier. ECF No. 1-3, at 1. During the first few months of his employment, his supervisor, Sydney Underwood, sought to develop a friendship with him by "assign[ing] herself as [his] child's godmother," giving him favorable work hours, calling him her "[t]win" because of their shared birthday, and giving him gifts for his daughter. ECF No. 18, at 3-4. In June 2019, after a social outing with other coworkers, Mr. Leguizamo, Ms. Underwood, and a third coworker took an Uber back to the Costco warehouse where their cars were parked. *Id.* at 4. Because he had to open the gas station at 5:00 am, Mr. Leguizamo planned to sleep in his car. *Id.* Ms. Underwood "decided to sit in [Mr. Leguizamo's vehicle's] back seat" and "diverted a conversation into her not wanting to go home to have sex." *Id.* Mr. Leguizamo laughed this comment off and "insist[ed] she go[] home." *Id.* The two then engaged in consensual sexual conduct. *Id.* at 5.

Mr. Leguizamo thereafter decided that he did not want to continue a relationship with Ms. Underwood. *Id.* He alleges that Ms. Underwood was upset by his lack of continued interest and orchestrated a campaign to get him to leave Costco. *Id.* at 2, 6. He points to several instances beginning in March 2021 where his requests for leave were denied and he was written up for unauthorized absences. *Id.* at 2-3, 6-8. After receiving one write-up in September 2021, Mr. Leguizamo's manager, "Mr. James," insinuated that Ms. Underwood had instigated the write-up. *Id.* at 6.

Mr. Leguizamo raised complaints about Ms. Underwood to his supervisors. In November 2021, he spoke with Mr. James and said that Ms. Underwood had "animosity" toward him and that "co-workers [were] noticing behavioral changes within the work place." *Id.* at 14.

He asked Mr. James to hold a departmental meeting to address concerns that Ms. Underwood was "abusing her position of power." *Id.*[1]

In December 2021, Mr. James and Costco's General Manager, "Mr. Mike," met with Mr. Leguizamo because they wanted to transfer him to work inside the Costco warehouse instead of at the gas station. *Id.* at 7-8. Mr. Leguizamo believed this to be an adverse employment action in retaliation for "engaging in protected activity with supervisor Underwood" in violation of Title VII. *Id.* During the meeting, Mr. Leguizamo complained to his supervisors about Ms. Underwood. *Id.* at 8-9. He accused Ms. Underwood of "harassment" and said that she had "destroyed the ethics of the work environment with her dec[ei]t, disrespect towards her employees, and narcissistic ways of supervising and managing the power to appease her work and personal life." *Id.* at 9. Mr. Leguizamo was thereafter transferred to a role inside the warehouse, a decision he believes "was done with malice as a form of punishment." *Id.* at 11. The transfer caused him "anxiety and paranoia [because] of [C]ovid" and resulted in the loss of previously accumulated leave. *Id.* at 10.

In December 2021 or January 2022, Mr. Leguizamo asked Mr. Mike if he could be transferred to a different Costco branch closer to his home. ECF No. 1-3, at 2; ECF No. 18, at 11-12. Mr. Mike verbally approved the request and provided Mr. Leguizamo with a form to complete. ECF No. 18, at 12. On the form, Mr. Leguizamo listed the reason for his transfer as harassment from Ms. Underwood. *Id.* Mr. Mike asked Mr. Leguizamo to change the form to reflect his request to work at a branch closer to his home, but Mr. Leguizamo told him that he was "keeping it as is, because of the fact of the matter, Mrs. Underwood giving false claims as a

---

[1] In an earlier filing, Mr. Leguizamo explained that this "abuse of power" concerned Ms. Underwood "manipulat[ing]" the schedule for additional time off. ECF No. 9-1, at 22-23.

supervisor." *Id.* at 13.  Mr. Leguizamo maintained that he needed to be transferred "because all this is stirring from [him] placing Mrs. Underwood into a friend zone and [his] not wanting relations with her." *Id.* at 15.  Mr. Mike asked what he was talking about, and Mr. Leguizamo explained that he and Ms. Underwood had engaged in sexual relations and Ms. Underwood then began "attacking and harassing [him] for being distant." *Id.*  Mr. Mike "[c]ondescendingly" asked whether their sexual encounter had happened while Ms. Underwood was married, *id.*, and he took no further action on Mr. Leguizamo's transfer request, *id.* at 15-16.

On August 13, 2022, Mr. Leguizamo was threatened with a three-day suspension for excessive absenteeism, but he does not allege that he had to serve the suspension.  ECF No. 9-1, at 6; ECF No. 9-2, at 11; ECF No. 18, at 2.  On September 8, 2022, Mr. Leguizamo resigned from Costco because he "could no longer deal with the situation."  ECF No. 1-3, at 2.  He contends that his "frustrations and cry for help w[ere] not tak[en] with the same sensitivity as it was done with and/or would have been handled with the respect of a female/woman."  ECF No. 18, at 16.

## II.     PROCEDURAL HISTORY

On February 18, 2023, Mr. Leguizamo filed an administrative charge with the EEOC, and he filed an amended charge on March 2, 2023.  ECF No. 7-1, at 3-5; ECF No. 9-2, at 64.[2]  In his amended charge, he explained:

> On June 30, 2019, I engaged in an incident with my former supervisor,
> Ms. Sydney Undewood[.]  After that incident, things did not happen
> the way Ms. Underwood wanted, therefore, she started to target and
> retaliate against me.  The retaliations got more and more extreme
> start[ing] from March 6, 2021, that was marked with her first write

---

[2] These exhibits were provided as part of Mr. Leguizamo's filings in earlier stages of the litigation, but the court will take judicial notice of them because they are from the EEOC proceedings.  *See Golden*, 319 F. Supp. 3d at 366 n.2.

> up against me for an incorrect reason and followed by another write
> up and other complaints until my resignation.
>
> In or around end of December 2021 or earlier January 2022, I officially
> made a request to the store General Manager, Mr. Mike LNU, to be
> transferred to another store.  My request was not approved.  I could
> no longer deal with the situation, and as a result, I made my
> resignation on September 8, 2022.
>
> I believe I was retaliated against for engaging in protected activity
> (Sex Male), in violation of The Civil Rights Act of 1964, as
> amended.

ECF No. 7-1, at 3-4.  On March 7, 2023, the EEOC informed Mr. Leguizamo that it would not

investigate his claim and informed him of his right to sue.  ECF No. 7-1, at 1.

In May 2023, Mr. Leguizamo filed suit in the Superior Court of the District of Columbia,

alleging retaliation in violation of Title VII and seeking $500 million in damages.  ECF No. 1-3.

Costco removed the matter to this court, ECF No. 1, and moved to dismiss for insufficient service

of process and failure to state a claim, ECF No. 4.  In February 2024, the court agreed with Costco

that Mr. Leguizamo had failed to effect proper service and directed that he do so by April 1, 2024.

ECF. No. 11.  Mr. Leguizamo effected service on March 7, 2024, ECF No. 15, and Costco renewed

its motion to dismiss, ECF No. 16.  The matter is fully briefed.  ECF Nos. 18, 19.[3]

## III.    LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556

U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially

plausible when the plaintiff pleads facts that are more than "'merely consistent with' a defendant's

---

[3] After Costco filed its reply brief, ECF No. 19, Mr. Leguizamo filed a motion for leave to file a
surreply, ECF No. 20, which Costco opposed, ECF No. 21.  Mr. Leguizamo indicated in his motion
that he wanted to retain a lawyer to file a surreply, but no counsel ever appeared in the case.
Accordingly, there is no basis to grant Mr. Leguizamo leave to file a surreply.

liability" and that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 557); *see Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) ("Plausibility requires 'more than a sheer possibility that a defendant has acted unlawfully.'" (quoting *Iqbal*, 556 U.S. at 678)). "A complaint survives a motion to dismiss even '[i]f there are two alternative explanations, one advanced by [the] defendant and the other advanced by [the] plaintiff, both of which are plausible.'" *Banneker Ventures*, 798 F.3d at 1129 (alterations in original) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

When ruling on a motion to dismiss, the court may only consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (alteration in original) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)). The court "must treat the complaint's factual allegations as true and must grant [the] plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation omitted) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). When the plaintiff is pro se, as Mr. Leguizamo is here, the court will "liberally construe[]" his filings even if they are "inartfully pleaded." *Erickson v. Pardus*, 551 U.S. 89, 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) ("[A] district court errs in failing to consider a pro se litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss."). The court, however, need not accept as true "a legal conclusion couched as a factual allegation" or an inference unsupported by facts set out in the

6

complaint.  *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## IV.    DISCUSSION

In its motion to dismiss, Costco argues that Mr. Leguizamo failed to administratively exhaust his claims and that his complaint fails to state a claim for relief for retaliation.  The court finds that Mr. Leguizamo exhausted his administrative remedies concerning an employee counseling notice issued on August 13, 2022 and his September 8, 2022 separation from Costco, but that he fails to state a claim on which relief can be granted.

### A.    Exhaustion of Administrative Remedies

A plaintiff may not initiate a civil action under Title VII until he has timely exhausted his administrative remedies for each discrete discriminatory or retaliatory act.  *Coleman v. Duke*, 867 F.3d 204, 206 (D.C. Cir. 2017); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). While the administrative charge requirement "should not be construed to place a heavy technical burden on 'individuals untrained in negotiating procedural labyrinths,' . . . [a] court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process."  *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (quoting *Loe v. Heckler*, 768 F.2d 409, 417 (D.C. Cir. 1985)).  Because the failure to exhaust administrative remedies is an affirmative defense, the defendant bears the burden to plead (and ultimately, prove) the plaintiff's failure to exhaust.  *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).  If the defendant meets this burden, then the burden shifts back to the plaintiff to "plead[] and prov[e] facts supporting equitable avoidance of the defense."  *Id.*

Costco contends that Mr. Leguizamo did not exhaust his administrative remedies for two reasons. First, Costco argues that Mr. Leguizamo did not allege in his complaint that he filed a

charge with the U.S. Equal Employment Opportunity Commission ("EEOC") or the D.C. Office of Human Rights ("D.C. OHR") or receive a right-to-sue letter.  ECF No. 16-1, at 4-5.  Second, Costco argues that, even if Mr. Leguizamo did file a charge, the only allegedly adverse action that would be timely for exhaustion purposes is his September 8, 2022 separation from Costco.  *Id.* at 5 n.2.

Costco's first argument lacks merit because the record contains materials showing that Mr. Leguizamo filed a charge with the EEOC on February 18, 2023, amended it on March 2, 2023, and received his right-to-sue letter on March 7, 2023.  ECF No. 7-1, at 1; ECF No. 9-2, at 56, 64; *see Golden*, 319 F. Supp. 3d at 366 n.2 (explaining that the court may take judicial notice of EEOC materials).  To be sure, Mr. Leguizamo did not allege administrative exhaustion in his complaint, but he was not required to do so.  *See Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 85 (D.D.C. 2014).

Turning to Costco's second argument about timeliness, the court concludes that Mr. Leguizamo's claims related to an August 13, 2022 employee counseling notice and his September 8, 2022 separation from Costco are timely.  Under a "work-sharing" agreement between the EEOC and D.C. OHR, a plaintiff must file his administrative complaint within 300 days of the allegedly discriminatory or retaliatory act.  *Greer v. Bd. of Trustees of Univ. of D.C.*, 113 F. Supp. 3d 297, 307 (D.D.C. 2015) (stating that a plaintiff's allegations of "discrete discriminatory acts" occurring more than 300 days before he filed an EEO charge were time-barred).  The two acts within 300 days of Mr. Leguizamo's February 18, 2023 administrative charge were the August 13, 2022 employee counseling notice and his September 8, 2022 separation from Costco.  His other claims concerning the denial of his leave request and

disciplinary write-ups beginning in March 2021 and the denial of his transfer request in December 2021 or January 2022 fall outside the 300-day period and are therefore not exhausted.

## B.    Retaliation Claim

To survive a motion to dismiss, the plaintiff must plausibly allege that (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action by his employer; and (3) a causal link connects the protected activity and the adverse action. *See Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009); *Pierre v. Bennett*, 686 F. Supp. 3d 1, 9 (D.D.C. 2023). Costco argues that Mr. Leguizamo has failed to sufficiently allege any element. ECF No. 16-1, at 5. The court largely agrees.

### 1.    *Protected activity*

Title VII prohibits an employer from retaliating against an employee because he "has opposed . . . an unlawful employment practice" or "has made a charge . . . or participated in any manner in an investigation" of discrimination. 42 U.S.C. § 2000e-3(a). Mr. Leguizamo did not file his EEOC complaint until months after he left Costco, so the court will analyze his complaint under Title VII's protection for opposing an unlawful employment practice.

The threshold requirement that a plaintiff engaged in protected activity is "ordinarily met when 'an employee . . . communicates to [his] employer a belief that the employer has engaged in a form of employment discrimination.'" *Savignac v. Jones Day*, No. 19-CV-2443, 2024 WL 4530225, at *43 (D.D.C. Oct. 3, 2024) (first alteration in original) (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 277 (2009)). "While no 'magic words' are required, the complaint must in some way allege unlawful discrimination, not just frustrated ambition." *King v. Blinken*, No. 23-CV-1386, 2024 WL 4345843, at *6 (D.D.C. Sept. 30, 2024) (quoting *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006)). "[A]mbiguous

complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity." *Dodson v. U.S. Capitol Police*, 633 F. Supp. 3d 235, 261 (D.D.C. 2022) (quoting *Clemmons v. Acad. for Educ. Dev.*, 107 F. Supp. 3d 100, 128 (D.D.C. 2015)).

Having parsed through Mr. Leguizamo's myriad filings, the court struggles to find where he engaged in protected activity.  At various points, Mr. Leguizamo appears to suggest that he "engag[ed] in protected activity with [Ms.] Underwood," ECF No. 18, at 8, but engaging in a consensual sexual relationship is not protected activity under Title VII.  And while Mr. Leguizamo complained about Ms. Underwood to his supervisors on several occasions, his complaints were largely focused on her management style and would not have put his supervisors on notice that he was claiming discrimination on the basis of sex.  For example, when Mr. Leguizamo spoke with Mr. James and Mr. Mike in December 2021, he complained of Ms. Underwood's "dec[ei]t, disrespect towards her employees, and narcissistic ways of supervising and managing."  ECF No. 18, at 9.  He explained that he was "representing the environment of [his] coworkers and [him]self continually being abused, [harassed], and having to walk on egg shells[] due to justified [sic] mistreatment of abusing titles and power."  *Id.*  These are general concerns about routine workplace disagreements, disconnected from Mr. Leguizamo's sex and not personal to him.  *See Golden*, 266 F. Supp. 3d at 284 (citing cases).

The closest Mr. Leguizamo comes to alleging that he engaged in protected activity is when he told Mr. Mike that he was requesting a transfer because Ms. Underwood was "attacking and harassing [him] for being distant" after their sexual encounter.  ECF No. 18, at 15.  If Mr. Leguizamo was disclosing sexual harassment, that would certainly be protected activity under Title VII.  *See Alley v. Penguin Random House*, 62 F.4th 358, 362 (7th Cir. 2023).  That said,

courts routinely hold that mere interpersonal conflict between an employee and his spurned coworker, without allegations that "the spurned supervisor made any sexual advances . . . following [the] breakup[] or engaged in other efforts to renew the relationship," is not actionable under Title VII. *Novak v. Waterfront Comm'n of N.Y. Harbor*, 928 F. Supp. 2d 723, 730 (S.D.N.Y. 2013) (collecting cases). This suggests that Mr. Leguizamo's comments to Mr. Mike were not protected activity. The court need not reach a definitive conclusion on this issue, however, because even if it assumes that Mr. Leguizamo's comments to Mr. Mike qualified as protected activity, Mr. Leguizamo cannot satisfy the remaining elements of a Title VII retaliation claim.

### 2.    *Materially adverse*

"[A] materially adverse action is one that is 'harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Joseph v. McFerran*, No. 22-CV-2881, 2024 WL 1213211, at *7 (D.D.C. Mar. 20, 2024) (second alteration in original) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).[4] As explained, Mr. Leguizamo has only exhausted his administrative remedies as it relates to an August 13, 2022 employee counseling notice and his September 8, 2022 separation from Costco. Unfortunately for Mr. Leguizamo, neither constitutes an adverse action under Title VII's retaliation provision.

With regard to the August 13, 2022 employee counseling notice, which is an unsigned, incomplete document proposing that Mr. Leguizamo serve a three-day suspension for excessive

---

[4] While the Supreme Court recently clarified the standard for an adverse action under Title VII's discrimination provision, *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), the Court clarified that the "materially adverse" threshold for Title VII retaliation claims remains unchanged, *id.* at 357.

absenteeism, ECF No. 9-2, at 11, Mr. Leguizamo admits that Costco "was suppose[d] to be giving" the notice to him, but he "was never counseled on the matter" and was instead "warned by a supervisor that it ha[d] been written to give to me."  ECF No. 9-1, at 4.  In the absence of an allegation that Mr. Leguizamo was actually served with the disciplinary notice, he has not suffered a "materially adverse" action.  *See Congress v. Gruenberg*, 643 F. Supp. 3d 203, 233 (D.D.C. 2022) ("A long line of cases from this Circuit and others have held that threats . . . and other such ultimately unconsummated actions are not materially adverse for purposes of retaliation claims." (alteration in original) (quoting *McNair v. District of Columbia*, 903 F. Supp. 2d 71, 75-76 (D.D.C. 2012))).

Turning to Mr. Leguizamo's September 8, 2022 separation from Costco, Mr. Leguizamo admits that he resigned.  ECF No. 1-3, at 2.  Resignation is not considered an adverse employment action unless the employee is able to demonstrate he was "constructive[ly] discharged."  *Douglas-Slade v. LaHood*, 793 F. Supp. 2d 82, 102 (D.D.C. 2011).  "The test for constructive discharge is an objective one: whether a reasonable person in the employee's position would have felt compelled to resign under the circumstances."  *Aliotta v. Blair*, 614 F.3d 556, 566 (D.C. Cir. 2010).  "[T]o establish 'constructive discharge,' the plaintiff must . . . show that the abusive working environment became so intolerable that [his] resignation qualified as a fitting response."  *Steele v. Schafer*, 535 F.3d 689, 695 (D.C. Cir. 2008) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 134 (2004)).

Mr. Leguizamo's allegations fall well short of that standard.  Mr. Leguizamo alleges that he resigned because Ms. Underwood's "retaliations got more [and] more extreme . . . from March 6, 2021 . . . until [his] resignation" in September 2022, and he "could no longer deal with the situation."  ECF No. 1-3, at 1-2.  But the timeline Mr. Leguizamo presents does not suggest an

environment "so intolerable" that resignation would be objectively fitting.  *See Steele*, 535 F.3d

at 695.  Over an eighteen-month period, he points to a handful of denied requests for time off,

write-ups for unscheduled absences, and the denial of his transfer request, which do not rise to the

level of an "abusive working environment."  *See id.*  Indeed, the only allegation of adverse action

between the denial of his transfer request in December 2021 or January 2022 and his resignation

in September 2022 is the August 13, 2022 employee counseling notice, ECF No. 18, at 2, which

Mr. Leguizamo concedes did not result in discipline, ECF No. 9-2, at 11.

### *3.    Causal link*

To satisfy the third and final element of a Title VII retaliation claim, the plaintiff must

allege a sufficient causal link between his protected activity and his employer's adverse action.

*See Jones*, 557 F.3d at 677.  A plaintiff can do so "by showing that the employer had knowledge

of the employee's protected activity, and that the adverse personnel action took place shortly after

that activity."  *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985).  "Temporal proximity

can . . . support an inference of causation, but only where the two events are 'very close' in time."

*Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007) (citation omitted) (quoting *Clark Cnty.*

*Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)).  While there is no bright-line rule, "the

Supreme Court has cited circuit decisions suggesting that[,] in some instances[,] a three-month

period between the protected activity and the adverse employment action may, standing alone, be

too lengthy to raise an inference of causation."  *Hamilton v. Geithner*, 666 F.3d 1344, 1357-58

(D.C. Cir. 2012).

Assuming for these purposes that Mr. Leguizamo's December 2021 or January 2022

conversation with Mr. Mike about his transfer request constituted protected activity and further

that his August 13, 2022 employee counseling notice or September 8, 2022 resignation could

satisfy the standard for action, a period of over seven months elapsed between these events.  Such

a long period does not support an inference of causation.  *See Bergbauer v. Mabus*, 934 F. Supp.

2d 55, 86 (D.D.C. 2013) (finding that a four-month gap could not support an inference of

causation); *Wilson v. Mabus*, 65 F. Supp. 3d 127, 133-34 (D.D.C. 2014) (same); *Baker v. Potter*,

294 F. Supp. 2d 33, 41 (D.D.C. 2003) (finding that a "two-month gap [was] not sufficient to

establish the temporal proximity necessary to show a causal connection").  Accordingly, the court

must dismiss Mr. Leguizamo's retaliation claim.

## V.   CONCLUSION

For the foregoing reasons, the court will issue a contemporaneous order denying

Mr. Leguizamo's Motion for Leave to File Surreply, ECF No. 20, granting Costco's Motion to

Dismiss, ECF No. 16, and dismissing the case.

_____
LOREN L. ALIKHAN
United States District Judge

Date:   January 29, 2025

14